# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

# STATE OF WISCONSIN.

---

## CAMERON VS. CAMERON and another.

The statute requiring that the bond of an administrator shall be "approved" by January Term, the county judge, is directory, and the granting of letters without such appro- 1862.
val in form, is at most but an irregularity, which can be taken advantage of
only by appeal from the order.

CAMERON
v.
CAMERON et al.

A decree is not evidence against a stranger to the record.

An administrator is not accountable to the estate for rents received by him from lands which did not belong to the decedent but were wrongly included in the inventory of the estate.

An inventory is not conclusive either for or against the administrator, but open to denial or explanation.

An estate is not chargeable with the services or disbursements of the administratrix in a suit brought by her in her individual name to establish the right of the intestate to real estate for the purpose of securing to herself an estate therein as his widow; nor for her services or disbursements in defending a suit brought by the heir to remove her from the administration on the ground that she obtained the appointment by a fraudulent representation that she was the widow of the intestate, and which last mentioned suit was compromised upon her concession that she had no title to the estate as widow or otherwise, and would resign her trust.

Nor can her co-administrator, who was also made a defendant in the suit last mentioned, charge the estate with his expenses and services as administrator and as counsel therein.

Where an administration is not one of unusual difficulty or responsibility, the administrator is entitled only to compensation at the rate of $1.00 per day for

VOL. XV—1

January Term,
1862.

CAMERON
v.
CAMERON et al.

actual services in attending to the ordinary affairs of the estate, and to his actual and necessary disbursements for its benefit. R. S. 1849, chap. 131, sec. 8.

Though very convenient and correct in practice, it seems not to be indispensable that the account of the administrator should be made up of items of days and half days spent in performing services. If the time actually devoted to the affairs of the estate be clearly proved, that will be sufficient.

Evidence to impeach an instrument signed by both parties, and found in the possession of the party offering it in evidence, ought to be as clear and unequivocal as that required to establish mistakes in such instruments, and the rule in such cases is, that the mistake should be established beyond any reasonable doubt.

The evidence in this case *held* to be insufficient for that purpose.

The deposition of a witness was taken on behalf of the administratrix of an estate, on the ground that he was about to leave the state and did not expect to return. Before the hearing of the case the witness married the administratrix, but at the time of the hearing was living without the state. *Held*, that having been competent to testify when his deposition was taken, his subsequent marriage did not affect his testimony or make the deposition inadmissible.

An objection to a deposition for want of sufficient notice, is waived by a cross examination.

If objection is not made in the court below to a deposition for want of proper notice or of a proper certificate by the magistrate, it cannot be made here.

APPEAL from the Circuit Court for *La Crosse* County.

This was an appeal by *Daniel Cameron, sen.*, the father and heir at law of Peter Cameron, deceased, from an order of the circuit court confirming the report of a referee to whom had been referred the final account of *Emma Cameron* and *Cyrus K. Lord*, as administrators of the estate of said deceased. On the hearing before the referee, the bond given by *Lord* as administrator was admitted in evidence, although not indorsed "approved" by the county judge. The referee also admitted in evidence the record of two suits, one of which had been brought by *Emma Cameron* against Daniel Cameron, jr., and the other by *Daniel Cameron, sen.*, against *Emma Cameron, Cyrus K. Lord* and Angus Cameron. The complaint in the suit first mentioned alleged that certain conveyances made by Peter Cameron in his life to his brother, Daniel Cameron, jr., were made in trust for the grantor, and that the land belonged in equity to his heirs, and that she, as his widow, was entitled to the use thereof during her life; and prayed that said Daniel Cameron, jr., might be decreed to execute a release of said real estate to the proper

heirs of said Peter. The other action was a bill in equity in the U. S. District Court for the district of Wisconsin, in which *Daniel Cameron, sen.*, alleged that he was the heir-at- law of Peter Cameron, deceased; that said *Emma* had fraud- ulently procured letters of administration of the estate of said Peter to be issued to herself and *Cyrus K. Lord*, by rep- resenting herself to be the widow of said Peter, when in fact she had never been his lawful wife; that said *Lord* had left the entire management of the estate to said *Emma*, and that she had wasted portions thereof; and prayed for an injunction to restrain said administrators from further interference with the assets of the estate. Decrees were afterward, by con- sent of parties, entered: in the first case, that the lands de- scribed in the complaint were lawfully conveyed to Daniel Cameron, jr., free of any trust, and of right belonged to him; in the other case, that the said *Emma* had no right, as widow of Peter Cameron or otherwise, to the real or personal estate of said Peter, as against the complainant; that the said *Em ma* should execute to *Daniel Cameron, sen.*, a release of all said real estate except certain portions thereof which said *Daniel* was to release to her; that the said *Emma* should ren- der her accounts as administratrix to the proper tribunal, including all sums which she had received, or which had been allowed to her, in the character of widow of said Peter; and that she should be allowed out of the funds in her hands "all just expenses of administering said estate, and the mon- eys which she has [had] expended in paying just debts of said estate, and in addition thereto the sum of $1100 in lieu of any claims which she may [might] have upon said estate as widow or heir." The stipulation on which these decrees were based was executed January 13th, 1857. The decrees were entered on the 23d of the same month. There was al- so read in evidence before the referee an agreement under seal, signed by *Emma Cameron* and *Daniel Cameron, sen.*, dated also January 13th, 1857, which recited that the parties had that day amicably settled all matters in dispute between them in reference to the estate of Peter Cameron, deceased; that said *Daniel* had, in satisfaction of all claims of the said *Emma*, conveyed to her certain real estate, and had also

January Term,
1862.

CAMERON
v.
CAMERON et al.

agreed that she might retain such sums of money as had theretofore been allowed to her by the probate judge, &c.; that he would pay her such further amount as would make the sum of $1100; that said *Emma* had agreed, on her part, to resign as administratrix, filing her accounts and settling her administration according to law, " claiming in said accounts no remuneration for her services as administratrix, and no allowance whatever for any disbursements or expenses made or incurred in any suit brought by her or defended by her in reference to said estate, or for any expenses or disbursements save the ordinary expenses of administration, funeral expenses, the payment of just debts, and taxes paid by her for said estate ;" and that said agreement, or a copy thereof, might be filed in the probate court, and be used as a basis for the settlement and allowance of the accounts of said *Emma* as administratrix. A question was made before the referee, as to whether the agreement last referred to was not abandoned by the parties, and the stipulation on which the decrees were based, executed in its stead as the final agreement of the parties. The testimony on this subject is sufficiently stated in the opinion of the court. The appellant also sought, on the hearing, to charge *Emma Cameron* with moneys she had received for rents of the property embraced in the conveyances from Peter Cameron to Daniel Cameron, jr.; but the referee disallowed this claim, and also disallowed the charges made by said *Emma* for her fees and disbursements in the two suits above mentioned, but allowed her the sum of $250 for her " personal services" as administratrix. He also allowed *Mr. Lord* $50 for ordinary services as administrator, and $200 for his services and disbursements in the suit brought against him and the administratrix by *Daniel Cameron, sen.* The deposition of one Bowles, taken on the part of the respondents, was admitted by the referee. It was taken on the 21st of April, 1858, for the reason that the witness was about to leave the state and did not expect to return. On the 7th of the following May, Bowles was married to *Emma Cameron.* At the time of the

hearing, which was in 1859, Bowles was living without the
state.

*Hugh & Alex. Cameron*, for appellant.

*Lyndes & Losey, contra.*

*By the Court*, DIXON, C. J.    The administration bond of the respondent *Lord* was properly received in evidence.    The statute requiring the approval of the county judge is directory, and his omission did not deprive him of jurisdiction. The granting of letters without such approval in form, was at most but an irregularity, which could only be taken advantage of by appeal from the order.

The record in the case of Emma Cameron vs. Daniel Cameron, jr., was improperly admitted.    As evidence that the title of the lands in controversy in that action was not in the respondents' intestate, it was inadmissible for the reason that the appellant and heir at law was not a party, and the action was prosecuted by *Emma Cameron* in her individual and not in her representative capacity.    The appellant, therefore, could not be bound, nor his rights affected, by the judgment.    It was inadmissible for the purpose of charging the estate with the expenses incident to that litigation, for reasons which will presently be more fully noticed.

The referee was correct in allowing the deposition of the witness Ralph C. Bowles to be read.    He was a competent witness at the time his testimony was given, and his subsequent marriage with *Mrs. Cameron* did not affect that testimony, the cause for taking the deposition still existing.    If the cause for taking the deposition had been removed, and he had been offered as a witness at the trial, the objection that he was then incompetent would have presented a very different question. The objections for the want of proper notice of the time and place of taking the deposition, and of a proper certificate by the magistrate, do not appear to have been made before the referee, and therefore cannot now be urged.    That for want of sufficient notice was waived by the appearance and cross-examination of the appellant's counsel. *Miller vs. McDonald*, 13 Wis., 673.

The moneys received by *Mrs. Cameron* for rent of

owned by Daniel Cameron, jr., are not proper charges in favor of the estate, and the referee was right in rejecting those items. The conveyances of September 18th, 1850, and March 25th, 1852, from Peter Cameron to Daniel Cameron, jr., show title in the latter, and that the former was not seized at the time of his death. The lands thus conveyed were, therefore, improperly included in the inventory and appraisements of assets, and it was competent for *Mrs. Cameron* to avoid her *prima facie* liability by showing the facts. The inventory is not conclusive either for or against the administrator, but is open to denial or explanation. *Willoughby vs. McCluer*, 2 Wend., 608. *Mrs. Cameron* is answerable to Daniel Cameron, jr., for the rents, and ought not to be charged twice, or to account to the estate for what never, in fact, belonged to it.

All the items and charges for *Mrs. Cameron's* personal services as administratrix and for expenses in and about the two suits—that above named, and that of *Daniel Cameron, sen. vs. Emma Cameron, Cyrus K. Lord* and Angus Cameron—should have been rejected. If the terms "all just expenses of administering said estate," in the decree and stipulation in the latter action, can be construed to include charges for personal services, which seems doubtful, the other stipulation of the same date, which, or a copy, was designed to be filed in the probate court, as the basis of proceedings to be had therein, shows very clearly that no pay for such services was to be demanded. The last stipulation is very explicit upon this point, it being expressly provided that in the filing and settlement of her accounts, she was to claim "no remuneration for her services as administratrix, and no allowance whatever for any disbursements or expenses made or incurred in or about any suits brought by her, or defended by her, in reference to the said estate, or for any expenses or disbursements saving the ordinary expenses of administration, funeral expenses," &c. The legal effect of the two stipulations is very nearly the same, and were we to reject the latter entirely, and place our decision alone upon the stipulation which constituted the basis of the decree, the result must be the same, except as to the items for personal services

pertaining to matters other than the litigation of the two suits in question. Conceding that the fees of the administratrix were comprehended by the words "all just expenses of administering said estate," the specification of that item and the items for moneys expended in the payment of just debts against the estate, and the $1100 in lieu of any claim which she might have as widow or heir, must, by a very familiar rule of construction, be held to operate as an exclusion of all other items and charges. In view of the situation of the parties, the nature of their controversies, and the settlement perfected, it cannot be supposed that they contemplated that the expenses of the litigation thus closed were to constitute a proper charge in favor of the administratrix against the estate. If such was the intention, they were certainly very unfortunate in the choice of language to express it.

But we think the evidence did not authorize the referee to disregard the stipulation designed for use in the probate court as the basis of settlement. The testimony of *Mr. Lord*, although it raises a strong suspicion that this stipulation was to have been surrendered and cancelled, is not of. that clear and positive character which the nature of the case requires. He speaks very doubtfully upon the subject, and is directly opposed by *Daniel Cameron, jr.*, who says positively that it was executed and delivered at the same time with the stipulations upon which the decrees were founded, and as a part of the same transaction. Evidence to impeach an instrument thus found in the possession of the adverse party, ought to be as clear and unequivocal as that required by law to establish mistakes in such instruments. The rule in such cases is, that the mistake must be established beyond any reasonable doubt. *Lake vs. Meacham*, 13 Wis., 355, and authorities there cited.

But if we are wrong in both these positions, still the estate ought not to be charged with the expenses of the suits, or *Mrs. Cameron's* time in attending to them. That against Daniel Cameron, jr., was clearly prosecuted for *Mrs. Cameron's* sole benefit, and in no way connected with the affairs of the estate. She sued in her individual capacity, and the burden of her complaint from beginning to end was the in-

juries which she would sustain in respect to her dower, if Daniel Cameron, jr., were permitted to set up his claims. It seems an idle waste of words to talk about that proceeding having been taken in behalf of the estate. The same is true of the action of *Daniel Cameron, sen.*, against herself and her co-administrators. She was charged with having intruded into the affairs of the estate upon the pretense that she was the widow of the deceased and as such entitled to administer—with a sort of usurpation of the office of administratrix, which, though it was obtained according to the forms of law, was nevertheless fraudulent and illegal. She contested the action, but her co-defendants made no answer. By the stipulation and settlement the claims of the plaintiff were substantially conceded, and she consented to retire from the office which she had thus obtained. It would be remarkable, indeed, if she could turn around and charge the estate or heir at law with the expenses of such litigation.

The charges of the respondent *Lord* for expenses and services as administrator and counsel in the same action, should have been disallowed. They are not proper charges against the estate. He made no defense, and it was a matter of no interest to him as administrator whether *Mrs. Cameron* was successful or not. Aside from the litigation of those suits, which did not pertain to the administration, the case appears not to have been one of unusual difficulty or responsibility. *Mr. Lord* is, therefore, only entitled to compensation at the rate of one dollar per day for actual services in attending to the ordinary affairs of the estate, and to his actual and necessary disbursements for the benefit of the estate, according to the provisions of the statute. R. S. 1849, chap. 131, sec. 8.

Though very correct and convenient in practice, it seems not to be indispensable, that the account of the administrator should be made up in items of days and half days spent in performing services. If the time actually devoted to the affairs of the estate be clearly proved, that will be sufficient. *Higbie vs. Westlake*, 14 N. Y., 281.

The allowance by the referee of $50 for the services of

Ralph C. Bowles, was, under the circumstances, reasonable and proper.

January Term, 1862.

MILTIMORE
v.
ROCK CO. et al.

The administratrix was properly credited with the value of the property delivered over to Daniel Cameron, jr., as her successor. That part of the order was not appealed from, or at least not contested.

The account of personal property which came to the hands of the administratrix is correct. She appears to have been charged with the full value as shown by the inventory and appraisement.

As the items of services and disbursements for which the respondents are entitled to compensation according to the principles settled by this opinion, are not distinguished by the proofs from those with which the estate cannot be charged, it may become necessary for the court to take further proof, or to re-commit the case to a referee, in order that they may be ascertained. We see no objection to either course being pursued.

The order of the circuit court is reversed, and the cause remanded for further proceedings in accordance with this opinion.