# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 6, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP804**

STATE OF WISCONSIN

Cir. Ct. No. 2019IN34

IN COURT OF APPEALS
DISTRICT III

IN RE THE ESTATE OF JOHN FERDINAND TOTZKE:

VICTORIA FINKE,

APPELLANT,

V.

CARL TOTZKE, C. ANTHONY TOTZKE AND JEFFREY TOTZKE, PERSONAL REPRESENTATIVE FOR THE ESTATE OF JOHN FERDINAND TOTZKE,

RESPONDENTS.

APPEAL from an order of the circuit court for Marathon County: SCOTT M. CORBETT, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Victoria Finke appeals an order of the circuit court granting summary judgment in favor of Carl Totzke and C. Anthony Totzke.  The court determined that the appropriate value for the estate of John Ferdinand Totzke's fifty-percent interest in an asset, Totzke Land, LLC (hereinafter, Totzke Land), was based on Totzke Land's "book value" as defined in its operating agreement.

¶2     On appeal, Victoria[1] argues that the circuit court was procedurally barred from granting summary judgment in favor of Carl and Anthony because the estate's interest in Totzke Land was established in an inventory using its fair market value.   Victoria also contends that Jeffrey Totzke, the personal representative of the estate, acted improperly by filing a summary judgment motion as opposed to "amending the [i]nventory to allow objection and an evidentiary hearing."   Lastly, Victoria asserts that there were disputed issues of material fact which prevented the court from granting summary judgment.  For the reasons that follow, we affirm the court's order.

## BACKGROUND

¶3     John passed away in February 2019, and his estate proceeded through formal probate.  Pursuant to John's will, Jeffrey was appointed as the estate's personal representative.  Beneficiaries to John's estate included Jeffrey, Carl, Anthony, and Victoria.  The estate owned a number of assets, including a fifty-percent interest in Totzke Land.[2]

_____

[1] We will refer to individuals relevant to this appeal singularly using their first names because some of the parties and relevant actors to this appeal share the same surname.

[2] Carl individually owned the remaining fifty-percent interest in Totzke Land.

¶4      During the formal probate, an issue arose regarding how the estate's fifty-percent interest in Totzke Land should be valued.  According to a filed inventory,[3] the estate's interest in Totzke Land totaled $757,434.39 based on the entity's fair market value.  However, Carl and Anthony filed a motion for summary judgment arguing that the inventory value did not take into account Totzke Land's operating agreement.  According to Carl and Anthony, a "buy-sell agreement" contained within the operating agreement required that the value of the estate's interest in Totzke Land be calculated according to its "book value," not its fair market value, and therefore the value of the estate's interest in Totzke Land was actually between $143,000 and $165,000.  Victoria opposed the motion for summary judgment, arguing, among other things, that the value of the estate's interest in Totzke Land should be calculated using its fair market value listed in the estate inventory because no party filed an objection to the inventory amount.

¶5      Ultimately, the circuit court issued an order granting Carl and Anthony's motion for summary judgment.  Victoria now appeals.[4]

---

[3] More than one inventory was filed.  Because there is no dispute regarding the values or contents of the last inventory filed, we will refer singularly to that inventory.

[4] Victoria contends in her reply brief that because Jeffrey did not submit a response brief in this appeal, he conceded that Victoria should prevail on the issues she raised on appeal.  In that same vein, Victoria argues, "This new position by [Jeffrey] is another reason the [circuit c]ourt's decision needs to be reversed."

We disagree with Victoria's arguments for two reasons.  First, Jeffrey informed this court that he would not be filing a response brief, which we permitted because Carl and Anthony had filed their brief.  Carl and Anthony filed the motion for summary judgment in the circuit court, and they adequately addressed the issues on appeal.  Under these circumstances, Jeffrey's decision not to file a response brief in this appeal did not concede the issues in favor of Victoria.  Second, because Jeffrey has not conceded that Victoria should win on the merits, there is no "new position" for this court to consider.

**DISCUSSION**

¶6      Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2021-22).[5] "We review de novo [a] grant of summary judgment, employing the same methodology as the circuit court." *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.

¶7      On appeal, Victoria asserts that the circuit court was procedurally barred from granting summary judgment in favor of Carl and Anthony because the estate's interest in Totzke Land was established in the inventory using its fair market value. Specifically, Victoria contends that the unobjected-to inventory amount—i.e., $757,434.39 based on the fair market value of Totzke Land—established the value of the estate's interest and that if a beneficiary wanted to object to this value, he or she was required to file a "seasonable objection."

¶8      Victoria fails to cite any authority to support her proposition that the value of an estate's asset listed in a probate inventory is binding as to the asset's ultimate value, especially when the asset is subject to a buy-sell agreement. The relevant statutory authority does not support her argument. WISCONSIN STAT. ch. 858 ("Probate—Inventory") generally requires a personal representative to "file an inventory of all property owned by the decedent. The inventory when filed shall show … the value of all property." WIS. STAT. § 858.01. Nothing in

_____

[5] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

ch. 858 states or indicates that an inventory is conclusive authority as to an asset's value.

¶9 Similarly, binding case law does not support Victoria's argument and, in fact, requires the conclusion that an inventory is not binding as to an asset's value. *See* **Langenbach v. Barrett**, 201 Wis. 336, 338, 230 N.W. 141 (1930) ("While it is true that the fact that the administratrix had inventoried the cattle as belonging to the estate might be considered in determining whether or not she had a half interest, the inventory certainly was not conclusive."); **Cameron v. Cameron**, 15 Wis. 1, 6 (1862) ("The inventory is not conclusive either for or against the administrator, but is open to denial or explanation."); **Maxcy v. Galow**, 242 Wis. 144, 147, 7 N.W.2d 575 (1943) ("Although the inventory is prima facie evidence of the value of the personalty, no reason appears why the administrator here could not properly make a motion, as he did, to correct the inventory if an error has been made." (formatting altered)); *see also* 31 AM. JUR. 2D *Executors and Administrators* § 402 (2023) ("Although the inventory may be prima facie evidence of the character, content, or value of the estate, or at least of the amount that came into the executor's hands, it is not binding on third persons or the executor or administrator." (footnotes omitted)).

¶10 We are similarly unpersuaded by Victoria's assertion that Carl and Anthony were required to "seasonably object" to the inventory value of the estate's interest in Totzke Land. In support of her argument that such an objection was required, Victoria cites to **Astrach v. First National Bank of Ripon**, 25 Wis. 2d 331, 335, 130 N.W.2d 878 (1964), in which our supreme court stated, "If a person interested in an estate wishes to contest an account presented for settlement by the executor or administrator," he or she must "seasonably" object.

(Citations omitted.) According to Victoria, an "account" includes a decedent's property and is the same as an "inventory."

¶11 An "account" is not an "inventory." *See* WIS. STAT. ch. 862 ("Probate—Accounts"); *cf.* WIS. STAT. ch. 858 ("Probate—Inventory"). It is well established that the filing of an account and an inventory are two separate requirements within probate, with the latter preceding the former. *See generally* 1 JAY E. GRENIG & NATHAN A. FISHBACH, WISCONSIN PRACTICE SERIES: METHODS OF PRACTICE §§ 22:50, 22:90 (5th ed. 2023). An inventory, which must be filed by "the personal representative, within a reasonable time but no later than 6 months after appointment unless the court has by order extended or shortened the time," includes "all property owned by the decedent" and "shall show" "the value of all property, what property is marital property and the type and amount of any existing obligation relating to any item of property." WIS. STAT. § 858.01. Conversely, an account, which must be filed, inter alia, "[w]hen the personal representative files a petition for final settlement," "shall itemize all property available for distribution and all property previously distributed and show its inventory value or if acquired by the personal representative during administration, its acquisition value." WIS. STAT. §§ 862.01(1), 862.07.

¶12 Accounts must be "seasonably objected" to pursuant to WIS. STAT. § 862.13. *See Astrach*, 25 Wis. 2d at 335. There is no such timeliness requirement for objecting to an inventory under WIS. STAT. ch. 858, and we therefore reject Victoria's argument that Carl and Anthony were required to "seasonably object" to the inventory value of Totzke Land. *See generally Ruediger v. Sheedy*, 83 Wis. 2d 109, 123, 264 N.W.2d 604 (1978) ("Though the [probate] code does not expressly provide for an objection to an inventory, a

6

review of the case law shows that an objection to the inventory has been a frequently used petition to challenge a particular item included in an inventory.").

¶13    Next, Victoria asserts that Jeffrey participated in a "bait and switch" when he sought to change the value of the estate's interest in Totzke Land. According to Victoria, Carl (Jeffrey's father) and Anthony (Jeffrey's brother) held a "secret family meeting" with Jeffrey, the goal being to "'change [Jeffrey's] mind' on the value" of Totzke Land. She argues that Jeffrey simply did "what his father" wanted instead of acting in the best interest of the beneficiaries.

¶14    As Carl and Anthony contend on appeal, however, the purpose of the meeting was to determine, consistent with the operating agreement, whether Carl, who was the sole remaining member of Totzke Land, would accept the estate's offer to sell him the estate's interest in Totzke Land at book value or reject that offer. Jeffrey's authority to sell the asset in accordance with the asset's operating agreement was well within his authority as personal representative of the estate. Jeffrey's authority was broadly given in John's will, which stated that Jeffrey had "full power and authority to sell and dispose of any and all of the property" as personal representative. *See* WIS. STAT. § 860.01 ("A personal representative … may sell, mortgage or lease any property in the estate without notice, hearing or court order."); WIS. STAT. § 857.03(1) (listing general powers and duties of a personal representative).

¶15    Victoria also argues that the circuit court erred in granting Carl and Anthony's motion for summary judgment because the court stated in its oral ruling on the motion that the operating agreement was ambiguous. Section 7.4 of the operating agreement, titled "Involuntary Transfer," required the transfer of an individual's interest in Totzke Land based on its book value, and Section 8, titled

"Dissolution and Dissociation," required the transfer of an individual's interest in Totzke Land based on its fair market value. The court determined that Section 7.4 applied, stating:

> I am interpreting the [operating agreement] in order to try to give meaning to the plain language that's been used in the agreement. However, I certainly can discern that reasonable people can fairly construct that [operating agreement] in more than one way …. I do find that in certain respects this agreement is ambiguous, but I am going to give a construction to that agreement that will … effectuate what appears to have been the intentions of the parties.
>
> ….
>
> So under the circumstances as have been laid out in the affidavits and information[] submitted to the [c]ourt, I'm finding that his death under these circumstances was an involuntary transfer.

According to Victoria, the court's finding precludes summary judgment.

¶16    However, Victoria fails to develop an argument as to why the circuit court's finding that part of the operating agreement was ambiguous precluded summary judgment. Her failure to develop an argument is particularly problematic because an ambiguous contract precludes summary judgment only "when the issue turns on the terms of an ambiguous contract *and* the contracting parties' intent is both: (1) not clear, and (2) disputed." *See Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425. Thus, we will not develop an argument on Victoria's behalf to address whether the operating agreement is indeed ambiguous, and if so, whether the contracting parties' intent was not clear and disputed. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769

8

N.W.2d 82 (we will not abandon our neutrality to develop arguments on behalf of a party).

¶17 Lastly, Victoria makes a number of meritless or undeveloped arguments. For example, she contends that she was improperly denied an evidentiary hearing on the value of the estate's interest in Totzke Land. Victoria fails to cite any authority for the proposition that such a hearing was required in this case. *See* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to review issues supported by only general statements and unsupported by references to legal authority). She also fails to articulate what evidence, if any, she was prevented from presenting via summary judgment proceedings.[6] Victoria also asserts that a genuine issue of material fact precluded summary judgment because there is conflicting evidence in the record as to when Jeffrey received the operating agreement. Victoria does not explain why this particular fact is material. *See id.* We will therefore not consider these arguments further.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Victoria claims that the referenced meeting "resulted in the changed desire to sell [Carl] the Estate's 50% ownership in [Totzke Land] for about $597,000 less than listed in the [i]nventory value. Certainly an evidentiary hearing would have brought this to light." Even if this factual allegation were true, it does not change the legal conclusion that the estate's asset was worth only what the operating agreement permitted.